**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

Jonathan Hudak,

    Plaintiff,

  v.

The Berkley Group, Inc. and,
Caribbean Cruise Line, Inc.,

    Defendants.

Civil Action No.: 3:13-cv-00089-WWE

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT AND MOTION TO STRIKE CERTAIN DAMAGES

  Plaintiff Jonathan Hudak respectfully submits this memorandum in opposition to the Motion to Dismiss Amended Complaint and Motion to Strike Certain Damages filed by Defendants Caribbean Cruise Line, Inc. ("CCL") and The Berkley Group, Inc. ("Berkley") (collectively, the "Defendants").  (Doc. No. 22).

## PRELIMINARY STATEMENT

  In his First Amended Complaint ("FAC"), Plaintiff seeks redress for Defendants' violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") arising from the unsolicited telemarketing calls Defendants made, or caused to be made, to him in Connecticut using an automated telephone dialing system with an artificial or prerecorded voice (hereafter, the "Robocalls").  (Doc. No. 21 at ¶¶ 28-33).   The TCPA was enacted for the very purpose of allowing consumers to seek protection through lawsuits like the one Plaintiff brings here.  As applicable here, it was intended to stop calls made to cellular telephones using an "automated telephone dialing system" ("ATDS") and/or prerecorded voice messages.  As

Congress found when enacting the TCPA, "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy."  TCPA, 105 Stat. 2394, 2394.  *See also ErieNet, Inc. v. Velocity Net, Inc.,* 156 F.3d 513, 514 (3d Cir.1998) ("The TCPA was enacted with the privacy-protective purpose of dealing with "common-nuisance telemarketing.").

Here, Defendants violated the TCPA and Plaintiff's privacy through the repeated calls made as part of their joint plan to offer a "free" cruise by Defendant CCL that was deceptively tied to various costs and fees and required attendance at a sales presentation for certain of Defendant Berkley's timeshare properties.  (Doc. No. 21, FAC at ¶¶ 16-20).

As evidenced by Defendants' actions in this case, unlawful calls to consumers continue to be a widespread problem, as telemarketers routinely violate the TCPA.  *See*, *e.g.*, *In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C.R. 1830, ¶ 22, 2012 WL 507959 (F.C.C. 2012) ("Since the TCPA's enactment and the adoption of implementing rules, the Commission has continued to receive thousands of complaints regarding unwanted telemarketing robocalls," and "notwithstanding current consent requirements and other TCPA safeguards, consumers continue to experience frustration in receiving unwanted telemarketing robocalls.").

Now, Defendants moves to dismiss Plaintiff's First Amended Complaint under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim. Defendants also move to strike Plaintiff's demand for "emotional distress" damages. Defendants' arguments are meritless.  First, this Court has specific personal jurisdiction over Defendants because Plaintiff's TCPA claim arises directly from the calls Defendants made or caused to be made to Plaintiff in Connecticut.  Second, Plaintiff has pleaded his TCPA claim with the requisite sufficiency.  Clearly, Defendants are on notice of the claims against them, as is

evidenced by their motion papers, wherein they impermissibly go beyond the pleadings and assert that they have no TCPA liability because they are not responsible for the calls described in the First Amended Complaint. (Doc. No. 22 at pp. 7, fn. 27 and fn. 35; Doc. No. 18-1 at ¶ 10; and Doc. No. 18-2 at ¶ 9). That is an issue for discovery to bear out, not one to be decided on a Rule 12(b)(6) motion to dismiss. Lastly, Plaintiff's demand for "emotional distress" damages is proper as "actual damages" are available under the TCPA.

The TCPA was enacted to provide consumers the opportunity to curb the type of abusive telemarketing practices complained of here. The jurisdictional basis for this Court to hear Plaintiff's case is clear-cut and inescapable. Plaintiff's TCPA claims arise from violative calls that Defendants are responsible for making. Defendants' arguments that a consumer cannot sue a foreign defendant in his home state where he received the calls runs afoul of the basic principles of personal jurisdiction and would also strip the TCPA of its teeth. As shown here, Defendants' arguments are unfounded and their motions should be denied in their entirety.

<u>ARGUMENT</u>

**I.        The Standard for Determining a Rule 12(b)(2) Motion.**

As is the case here, prior to discovery, a plaintiff may defeat a motion to dismiss by making a prima facie case of personal jurisdiction based on legally sufficient allegations of jurisdiction. *See Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir. 1990). In ruling on a 12(b)(2) motion, the court accepts allegations in the complaint as true and resolves all factual disputes in the plaintiff's favor. *Thomas v. Ashcroft,* 470 F.3d 491, 495 (2d Cir. 2006); *see also ICG America, Inc. v. Wine of the Month club, Inc.*, 2009 WL 2843261, *2 (D. Conn. Aug. 28, 2009) (citation omitted) ("When the proceedings are in their beginning stages, the plaintiff's *prima facie* burden is satisfied by good faith allegations in the pleadings.").

In a diversity case, the Court conducts a two part inquiry.  First, the Court determines whether the forum state's long-arm statute authorizes the exercise of personal jurisdiction on the defendant.  If the long-arm statute does reach the defendant, the Court then determines whether its assertion of jurisdiction under the long-arm statute comports with the requirements of constitutional due process.  *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 566-67 (2d Cir. 1996).  "The defendant's action must establish 'certain minimum contacts ... [so] that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Broad. Mktg. Int'l, Ltd. v. Prosource Sales & Mktg.,* 345 F.Supp.2d 1053, 1057 (D. Conn. 2004) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

## II.    Under Connecticut's Long-Arm Statute, the Court has Jurisdiction over Defendants.

Here, there is personal jurisdiction over Defendant CCL and over Defendant Berkley under two separate prongs of the Connecticut long-arm statute (Conn. Gen. Stat. § 33-929).  One basis for jurisdiction is because Plaintiff's TCPA cause of action arises from Defendants' admitted solicitation of business in Connecticut.  (*See* Doc. No. 18-1 at ¶ 9).  A second, and independent, jurisdictional basis exists because Plaintiff's TCPA cause of action arises from Defendants' tortious conduct in Connecticut when they breached their statutory duties by making the violative telephone calls.  To wit, Conn. Gen. Stat. § 33-929(f) sets forth, in pertinent part:

> (f) Every foreign corporation shall be subject to suit in this state …
> on any cause of action arising as follows:
>
> * * *
>
> (2) out of any business solicited in this state by mail or otherwise if
> the corporation has repeatedly so solicited business …

or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

### A.   Jurisdiction Exists Based Upon Defendants' Repeated Solicitation of Business in Connecticut.

Here, Defendants each solicit business sufficiently in Connecticut to subject each of them to Connecticut's long arm statute.  Under Section 33-929(f)(2) of the Connecticut long arm statute, in which jurisdiction is based upon repeated solicitation of business, "a plaintiff need only demonstrate that the defendant could reasonably have anticipated being hauled into court here by *some person who had been solicited* in Connecticut and that the plaintiff's cause of action is not materially different from an action that might have resulted directly from that solicitation."  *A Slice of Pie Products, LLC v. Wayans Bros. Entertainment*, 392 F. Supp. 2d 297, 303-04 (D. Conn. 2005) *quoting Thomason v. Chemical Bank,* 234 Conn. 281, 296, 661 A.2d 595, 603 (Conn.1995) (emphasis in original).

Here, the uncontroverted allegations in the First Amended Complaint show that there is personal jurisdiction over Defendants based upon their repeated solicitation of Connecticut consumers with respect to Defendants' respective travel businesses in Florida.  First, Plaintiff alleged that "Defendants' joint telemarketing scheme to solicit timeshare sales through 'free' cruise offers is widespread."  (Doc. No. 21, FAC at ¶ 23).  Defendant CCL even substantiates this allegation by admitting "CCL's contact with residents in Connecticut is limited to direct mailing and phone calls."  (Doc. No. 18-1 at ¶ 9).  As such, this is a case where Defendants repeatedly solicit business in Connecticut.  Moreover, Plaintiff's TCPA cause of action is not materially different from an action that might have resulted from this telemarketing solicitation. It is uncontroverted that Defendants made, or caused to be made, unsolicited telemarketing calls to Plaintiff's cellular telephone in Connecticut.  (Doc. No. 21, FAC at ¶¶ 12-15).  And these

phone calls give rise to Plaintiff's claim under the TCPA. (*Id.*, ¶¶ 28-30). Any other Connecticut consumer receiving similar calls would also have a TCPA cause of action.

Given Plaintiff's "light burden prior to jurisdictional discovery," these allegations are sufficient to establish personal jurisdiction over Defendant CCL and over Defendant Berkley. *See Slice of Pie Products,* 392 F.Supp.2d at 303-04. Drawing all reasonable inferences in the light most favorable to Plaintiff, it can be inferred that Defendants repeatedly solicit potential customers from Connecticut through its telemarketing practices such that it was aware that disputes might arise in Connecticut from their or their agent's mishandling of any of these telemarketing calls in violation of the TCPA, and that Defendants solicited Plaintiff in Connecticut through its telemarketing campaign. Accordingly*,* Plaintiff in this case has met his "light burden" under the long-arm statute at this juncture. *Id.  See also ICG America* 2009 WL 2843261, at *5 (repeated solicitation shown by e-mails "aimed to promote Defendant's products and increase its sales in Connecticut").

Defendants' affidavits attempting to dispute these jurisdictional facts are so vague and scant that they must be disregarded by the Court. The only information that each Defendant provides is that it "did not make the call(s) as Plaintiff alleges in the Complaint." (Doc. No. 18-1 at ¶ 9; and Doc. No. 18-2 at ¶ 9). Clearly, these affidavits do not expressly dispute Plaintiff's allegations that the Defendants made, or caused to be made, the subject telephone calls. As such, Plaintiff's allegations must be taken as true for the purposes of Defendants' motion to dismiss for lack of personal jurisdiction. *See Thomas*, 470 F.3d at 495; *see also David v. Weitzman*, 677 F.Supp. 95, 98 (D. Conn. 1987) ("all ambiguities in the pleadings and affidavits must be construed in the light most favorable to plaintiff") (quotations and citation omitted). Even if Defendants' affidavits are deemed as contesting Plaintiff's affidavit showing that Defendant

CCL made the calls (which they do not), this dispute must still be construed in favor of

jurisdiction.  *See Thomas*, 470 F.3d at 495; *see also A.I. Trade Finance Inc. v. Petra Bank,* 989

F.2d 76, 79–80 (2d Cir.1993) (All allegations are to be construed in the light most favorable to

plaintiff, and all doubts are to be resolved in plaintiff's favor, notwithstanding controverting

evidence by defendants.).

Repeatedly, Plaintiff alleges that Defendant CCL and Defendant Berkley worked in

concert and caused the Robocalls to be made to Plaintiff in Connecticut as part of their "joint

telemarketing scheme."  (Doc. No. 21, FAC, at ¶¶ 12, 13, 18, 20 and 23).  As such, even if either

or both of the Defendants worked through or in coordination with another entity to solicit

business repeatedly from Plaintiff and other potential Connecticut customers, they still could not

escape jurisdiction under Section 33-929(f)(2) of Connecticut's long arm statute.  On this point,

*Szollosy v. Hyatt Corp.*,2000 WL 1576396 (D. Conn. Sep. 14, 2000) is instructive.  There, one

defendant hotel entity could not avoid jurisdiction by arguing that its solicitation of Connecticut

customers was only indirectly "through or in coordination" with another defendant hotel entity.

Rather, the court found that even if that were the case, the indirectly involved defendant was still

subject to jurisdiction based on the existence of a "mutually beneficial relationship" that it had

established with the entities directly soliciting the Connecticut customers.  *Id.* at *4.  A similar

finding is required here that both Defendant CCL and Defendant Berkley solicited Connecticut

customers as they both benefitted from the "joint telemarketing scheme" that promoted

Defendant CCL's "free" cruises and Defendant Berkley's timeshare properties.

Defendants also cannot prevail on their motion by taking the position that some third-

party made the Robocalls on behalf of the Defendants.  These acts would still be imputed to

Defendants for jurisdictional purposes.  *See, e.g., Mallon v. Walt Disney World Co.* (D. Conn.

1998) (quotations and citations omitted) ("Defendants, acting through their agent, deliberately reached out to attract Connecticut residents to their resort."). Having a third-party make the telephone calls would also not allow Defendants to escape liability under the TCPA. To wit, the Federal Communications Commission ("FCC") has unequivocally ruled that "[c]alls placed by an agent of telemarketer are treated as if the telemarketer itself placed the call." *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Memorandum Opinion and Order, 100 FCC Rcd 12391, 12397 at ¶ 13 (1995).

  **B. Jurisdiction Exists Based Upon Defendants' Tortious Conduct in Connecticut.**

  Under Section 33-929(f)(4) of the Connecticut long arm statute, jurisdiction lies against a foreign corporation for any cause of action arising "out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance." Here, Defendants committed "tortious conduct" in Connecticut when they made, or caused to be made, the Robocalls to Plaintiff in violation of their statutory duties under the TCPA.

  As discussed in the previous section, it is uncontroverted that Defendants made, or caused to be made, unsolicited telemarketing calls to Plaintiff's cellular telephone in Connecticut. (Doc. No. 21, FAC at ¶¶ 12-15). Under Section 33-929(f)(4) of the Connecticut long arm statue, "communications sent into the state can constitute tortious acts within the state." *Van Law v. Proficio Mortgage Ventures, LLC*, 2010 WL 3926064, *4 (D. Conn. Oct. 1, 2010). Moreover, the breach of a statutory duty (such as Defendants' violations of the TCPA here) is an action sounding in tort. *See, e.g., Curtis v. Loether,* 415 U.S. 189, 195, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) (damages action pursuant to statute sounds in tort because it defines new legal duty and authorizes courts to compensate plaintiff for injury caused by defendant's

wrongful breach of duty); *Federal Deposit Ins. Corp. v. Citizens Bank & Trust Co.,* 592 F.2d 364, 368–69 (7th Cir.) (liability for breach of duty imposed by statute sounds in tort), cert. denied, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979).

Accordingly, pursuant to Section 33-929(f)(4) of the Connecticut long arm statute, Defendants are subject to jurisdiction for the tortious conduct they committed when they made calls, or caused calls to be made, to Plaintiff in Connecticut in violation of the TCPA.

### III.   The Exercise of Personal Jurisdiction Over the Defendants Comports with Constitutional Due Process.

As both Defendant CCL and Defendant Berkley are within the reach of Sections 33-929(f)(2) and (4) of Connecticut's long arm statute, the final matter for consideration is whether the exercise of personal jurisdiction comports with constitutional due process.  This analysis has two parts.  First, the court must determine whether the foreign defendant has the necessary "minimum contacts" with the forum state.  *Metropolitan Life Ins. Co.*, 84 F.3d at 567.  Second, the Court must determine whether exercising personal jurisdiction over the foreign defendant comports with "traditional notions of fair play and substantial justice."  *Id.*

#### A.   Defendants Have the Requisite Minimum Contacts with Connecticut.

To have the minimum contacts sufficient to satisfy constitutional due process, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" such that the defendant "should reasonably anticipate being haled into court there.  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quotations and citations omitted).

Here, there is no question that Defendants purposefully availed themselves of the privilege of doing business in Connecticut.  Defendants repeatedly made calls, or caused calls to be made, to Plaintiff in Connecticut as part of their larger joint telemarketing effort to numerous

Connecticut residents in an effort to sell Defendant CCL's cruises and Defendant Berkley's timeshare properties.  Defendants' repeated solicitation of potential customers in Connecticut "also satisfies the minimum contacts required under *International Shoe* and its progeny."  *Slice of Pie Products,* 392 F.Supp.2d at 303-04; *see also ICG America*, 2009 WL 2843261, at *7 ("Purposeful activity within the state that results in minimum contacts with the forum state may include the solicitation of business by defendants.").  In *ICG America, supra,* purposeful availment was evidenced by e-mails to Connecticut residents to induce additional wine sales.  *Id.* Similarly, the telemarketing calls Defendants are responsible for making were to Connecticut residents to induce sales of their cruises and timeshare properties.  It is reasonable for Defendants to anticipate being haled into court in Connecticut to defend itself against claims that these telemarketing calls violated the TCPA.

> **B.    Exercising Personal Jurisdiction over Defendants Comports with Fair Play and Substantial Justice.**

In determining whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice," the Second Circuit considers the following five *Asahi* factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies."  *Metropolitan Life Ins. Co.,* 84 F.3d at 568.  Once minimum contacts are established, "dismissals resulting from the application of the reasonableness test [Asahi factors] should be few and far between."  *Id.* at 575.

First, no substantial burden is placed on Defendants if this Court accepts jurisdiction. Defendants do not provide any evidence that they would be substantially burdened by having to

defend this case in Connecticut. Defendants' location in Florida is relatively close to this

District, and it is well recognized that modern communication and transportation have made

defending a lawsuit in a foreign tribunal less burdensome. *See, e.g., ICG America,* 2009 WL

2843261, at *8; *Van Law*, 2010 WL 3926064, at *5; *World–Wide Volkswagen Corp. v.*

*Woodson,* 444 U.S. 286, 294 (1980). As a result, the first factor weighs in favor of this Court

asserting jurisdiction over Defendants.

Second, Connecticut has a strong interest in providing a forum for Plaintiff. The state of

Connecticut maintains a strong interest in providing a forum for its residents in circumstances

such as these to insure that its residents are not injured by foreign entities. The TCPA aims to

eliminate abusive telemarketing practices. Here, Defendants made, or caused to be made,

abusive telemarketing calls to Plaintiff in Connecticut. If the court refuses to grant jurisdiction,

Connecticut consumers suffering such abuse may not have a forum to seek redress since they

would be forced to file suit in far away and inconvenient forums.

Third, Plaintiff has an interest in obtaining relief in this District. The phone calls which

violate the TCPA were received by Plaintiff in Connecticut. Plaintiff therefore suffered his

injuries and harm in this District. As a result, Plaintiff has an interest in obtaining relief in this

jurisdiction. *See e.g.*, *Cody v. Ward*, 954 F.Supp. 43, 47 (D. Conn. 1997) ("Connecticut has a

strong interest in adjudicating this dispute and the plaintiff has an obvious interest in obtaining

convenient and effective relief, which would be impaired if her were required to sue the

defendant in California.").

Fourth, judicial efficiency is served by this Court asserting jurisdiction over the

Defendants. The efficient resolution of a controversy is furthered when a court asserts

jurisdiction over a case that is currently on that court's active docket. This case is currently on

this Court's active docket.  Therefore, the interstate judicial system's interest in the most efficient resolution of controversies would be furthered if this Court grants jurisdiction.

Fifth, the shared interest of the several states in furthering social policy dictates that this Court accepts jurisdiction.  Again, the TCPA aims to eliminate abusive telemarketing practices. *See* 105 Stat. 2394, 2394-95, *supra*.  In order to further this social policy of eliminating abusive telemarketing practices, Connecticut courts must assert jurisdiction over defendants who cause injuries to plaintiffs in Connecticut.  Otherwise, the social policy behind the TCPA will be frustrated as Texas plaintiffs will not be able to file suit in Texas.

Therefore, all five factors weigh in favor of this Court asserting jurisdiction over Defendants.  As a result, it would be fair, and substantial justice would be served, if this Court asserts jurisdiction over Defendants.

### IV.   If Plaintiff has Not Made His Prima Facie Case for Jurisdiction, He should Be Allowed to Conduct Jurisdictional Discovery.

 Even if the Court finds that Plaintiff has not made out a prima facie case for personal jurisdiction through his First Amended Complaint and the submissions included herewith, then, at a minimum, he has made a "sufficient start" warranting discovery on the jurisdictional issues. As this District recognizes, "case law within the Second Circuit indicates that district courts have permitted jurisdictional discovery where a plaintiff has made less than a prima facie showing but made a 'sufficient start' toward establishing personal jurisdiction." *Powder Coating Consultants v. Powder Coating Institute,* 2009 WL 3418224, at *1 (D. Conn. Oct. 21, 2009) (citation omitted).  To make such a showing, Plaintiff must demonstrate that facts supporting personal jurisdiction may exist that discovery should draw out. *Sultanik v. Cobden Chadwick, Inc.,* 94 F.R.D. 123 (E.D.N.Y.1982) (light burden on plaintiff is satisfied by stating facts in the complaint

and other papers sufficient to support a reasonable inference that defendant may be subject to personal jurisdiction within the state).

Thus, while Plaintiff believes he has made a sufficient showing to deny Defendants' jurisdictional motions, he alternatively requests the Court permit Plaintiff to conduct limited jurisdictional discovery into what involvement Defendants had in relation to the Robocalls that Plaintiff received promoting Defendant CCL's "free" cruise to the Bahamas and certain timeshares operated by Defendant Berkley. Here, there is ample evidence to suggest the "possible existence" that Defendants are responsible for the subject calls that gave rise to Plaintiff's TCPA claim and are thus subject to specific jurisdiction.

Because the Robocalls promoted both Defendants' respective businesses, there is a "possible existence" that both Defendants are responsible for the calls. Defendant CCL's website describes how a condition of accepting this offer is to attend a sales presentation for various timeshare properties, including Vacation Village at Bonaventure and Vacation Village at Parkway. (Doc. No. 21, FAC at ¶¶ 15-19; Lemberg Decl., Ex. A and Ex. B at ¶ 23).[1] Vacation Village at Bonaventure and Vacation Village at Parkway are two of Defendant Berkley's timeshare properties. (Lemberg Decl., Ex. C). This joint enterprise between the Defendants is widespread, as evidenced by the various complaints noted on the Better Business Bureau website entry for Defendant CCL wherein consumers have complained "that they must attend a two hour timeshare presentation as part of the agreement." (Doc. No. 21, FAC at ¶ 24; Lemberg Decl., Ex. D).[2]

---

[1] "Lemberg Decl." refers to the accompanying Declaration of Sergei Lemberg filed herewith.

[2] As no discovery has taken place yet, Plaintiff can only rely on information obtained from the Internet at this point to assert further reasons why jurisdictional discovery is warranted if the

It further appears that the connections between Defendants go back more than a decade, evidencing the likelihood of them having worked together with respect to the Robocalls.  Resort Marketing Holdings, Inc. is the parent company of Defendant CCL.  (Lemberg Decl., Ex. E). On the Florida Department of State, Division of Corporations website, the two directors for Resort Marketing Holdings, Inc. are listed as Daniel Lambert and James Verrillo.  (Lemberg Decl., Ex. F).  In a 1998 litigation brought by the Securities and Exchange Commission against him, Mr. Lambert admitted that he was the son of the then Chief Executive Officer of the Berkley Group. (Lemberg Decl., Ex. G at ¶ 2; and Ex. H at ¶ 2).  In that same litigation, Mr. Verrillo admitted in his Answer that "in the course of his business" he "had frequent contact with some individuals associated with … the Berkley Group."  (Lemberg Decl., Ex. G at ¶ 26 ; and Ex. I at ¶ 26).

Based on this history between the Defendants and the common benefit they derived from the Robocalls, jurisdictional discovery is warranted to further explore their respective roles in the making of the Robocalls to Plaintiff.  Discovery is necessary to determine the specific arrangement between these two companies and how exactly the phone calls were made. Importantly, Defendants would still have liability under the TCPA even if they did not directly make the phone calls themselves, but caused the phone calls to be made.  *See, e.g., Birchmeier v. Caribbean Cruise Line, Inc.*,  2012 WL 7062748 at *1 (N.D. Ill. Dec. 31, 2012).

Fairness dictates that, at the very least, Plaintiff is entitled to jurisdictional discovery because the discovery is of information that is within Defendants' exclusive control. Specifically, if the Court does not deny the motion to dismiss outright, Plaintiff seeks to propound to each Defendant ten (10) interrogatories and twenty (20) requests for production, and

---

motion is not dismissed outright.  Such a practice is routine.  *See, e.g., Biro v. Conde Nast*, 2012 WL 3262770 (S.D.N.Y. Aug. 10, 2012).

to take depositions of each Defendant, on the issues relevant to the question of personal

jurisdiction.  These issues include, but are not limited to:

a)    The extent to which each Defendant was directly involved in making or initiating

or otherwise prompting the Robocalls to Plaintiff in Texas;

b)    The extent to which each Defendants directed, instructed, or hired others to make

or initiate the Robocalls to Plaintiff in Texas; and

c)    The extent to which each Defendant otherwise purposefully availed itself of

this forum.

For the foregoing reasons, should the Court find that questions remain concerning

personal jurisdiction over Defendants in this forum, Plaintiff respectfully requests that the Court

enter an Order giving Plaintiff sixty (60) days to conduct the limited, jurisdictional discovery

requested herein.

### V.    The Standard for Determining a Rule 12(b)(6) Motion.

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "accept as true

all of the factual allegations set out in plaintiff's complaint, draw inferences from those

allegations in the light most favorable to plaintiff, and construe the complaint liberally."

*Rescuecom Corp. v. Google, Inc.,* 562 F.3d 123, 127 (2d Cir. 2009).  The Rule 12(b)(6) pleading

standards are derived from Federal Rule of Civil Procedure 8(a)(2), which requires that each

claim be supported by "a short and plain statement of the claim showing that the pleader is

entitled to relief."  Fed.R.Civ.P. 8(a)(2).  To satisfy Rule 8(a)(2) and survive a Rule 12(b)(6)

motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937,

173 L.Ed.2d 868 (2009) (internal quotation marks omitted).  Although this standard requires that

a claim be "plausible on its face," it does not require that a complaint contain "detailed factual allegations." *Id.* (quotation marks and citation omitted); s*ee also Erickson v. Pardus,* 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the … claim is and the grounds upon which it rests.")  (quotation marks and citations omitted).

## VI.    Plaintiff has Adequately Pleaded His TCPA Claim.

Defendants are on notice as to what Plaintiff's TCPA claim is and the grounds upon which it rests.  Here, the First Amended Complaint easily satisfies Rule 8's liberal pleading standard; it addresses every element of the statutory violations Plaintiff claims here.  To wit, except for certain limited exceptions not at issue in Plaintiff's case, the TCPA forbids making calls to cellular telephones, without prior express consent, using: (1) an "automated telephone dialing system" ("ATDS"); and/or (2) an artificial or prerecorded voice.  *See*  47 U.S.C. § 227(b)(1)(B)).  Taking all of the allegations in the First Amended Complaint as true, Plaintiff adequately pleads that Defendants violated the TCPA by making, or causing to be made, telemarketing calls to Plaintiff's cellular telephone number using an ATDS and/or an artificial or prerecorded voice to promote Defendant CCL's cruises and Defendant Berkley's timeshare properties, and without obtaining Plaintiff's consent.  (Doc. No. 21, FAC at ¶¶ 12-27).  Specific factual allegations supporting each of the elements of Plaintiff's TCPA claim are set forth as follows:  (a) Defendants made, or caused to be made, the subject calls (¶¶ 12-14); (b) the calls were for telemarketing purposes to promote Defendants' respective businesses (¶¶ 12, 13, 15-21); (c) the calls used an artificial or prerecorded voice (¶ 15); and (d) Defendants did not obtain Plaintiff's prior express consent (¶ 22).

Nonetheless, Defendants move to dismiss on the ground that the First Amended Complaint: (1) fails to adequately allege that Defendants "made" or "initiated" the Robocalls; (2) fails to adequately allege that the Robocalls were made with an "automated telephone dialing system and/or an artificial or prerecorded voice;" and (3) fails to specify each Defendant's role with respect to the Robocalls. As shown below, these arguments are completely devoid of merit.

### A.   Plaintiff Adequately Pleads that Each Defendant is Responsible for the Calls.

Plaintiff has adequately pled that Defendants "made" the Robocalls by alleging:

> 13.   In furtherance of this joint marketing effort, within the past four years, Defendants made, or caused a third-party to make on their behalf, up to two calls a day to Plaintiff's cellular phone using an automated telephone dialing system with an artificial or prerecorded voice (hereafter "Robocalls").

> 14.   In total, Defendants have placed, or caused to be placed, hundreds of Robocalls to Plaintiff's cellular telephone.

> * * *

> 29.   Defendants made, or caused to be made, hundreds of telephone calls to Plaintiff's cellular telephone using an automated telephone dialing system and/or an artificial or prerecorded voice to deliver a telemarketing message without the prior express consent of the Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

> * * *

> 32.   Because the subject telemarketing calls were made on behalf of and/or for the benefit of each of the Defendants, Defendant Berkley and Defendant CCL is each responsible for each and every TCPA violation arising from these calls.

(Doc. No. 21, FAC).

The First Amended Complaint also alleges in detail how the Robocalls promoted Defendant CCL's cruise offerings and Defendant Berkley's timeshare properties.  (*Id.* at ¶¶ 15-20).  Defendants contest that they have no connections to these phone calls because the calls

promote products "similar" to Defendants' products, but not Defendants' actual products.  (Doc. No. 22 at p. 13).  To the contrary, the First Amended Complaint provides sufficient detail that these are Defendants' products being promoted through the Robocalls.  (Doc. No. 21, FAC at ¶¶ 15-20).  Moreover, this is a factual issue that cannot be resolved on a Rule 12(b)(6) motion.

Defendants would still have TCPA liability even if they encouraged a third-party to make the Robocalls.  As such, the allegation plead in the alternative that Defendants "caused a third-party to make on their behalf" the Robocalls  (FAC at ¶ 13) still adequately supports Plaintiff's TCPA claim.   Under the TCPA, "the term 'initiate' is broad enough to include cases where … a party has encouraged or otherwise prompted [other entities] to make calls on its behalf."  *Desai v. ADT Security Services, Inc.*, 2011 WL 2837435 at *1 (N.D. Ill. 2011).  *See also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Memorandum Opinion and Order, 100 FCC Rcd 12391, 12397 ¶ 13 (1995) ("Calls placed by an agent of telemarketer are treated as if the telemarketer itself placed the call.").

Policy considerations also dictate that Defendants can be liable for the Robocalls even if they didn't actually "initiate" the phone calls themselves by directly dialing them.  If liability was so limited, "a party could benefit from violations of the TCPA with impunity, so long as the task of actually making the phone calls were delegated to another entity."  *Desai*, 2011 WL 2837435 at *1.  *See also Birchmeier*,  2012 WL 7062748 at *1 ("The Court also rejects defendants' contention that liability attaches under the TCPA only to the party that actually placed the call.").

Accordingly, Plaintiff has adequately pled that Defendants are responsible for the Robocalls under the TCPA section at issue here.  Defendants' exact role in the making of the

phone calls is not a matter properly before the Court now because it "is a factual matter that

cannot be resolved on a Rule 12(b)(6) motion." *Desai*, 2011 WL 2837435 at *1.

> **B.      Plaintiff Adequately Pleads that the Calls were Made Using an ATDS and/or
> and Artificial or Prerecorded Voice.**

Defendants also make the unfounded contention that the First Amended Complaint fails

to adequately plead that either Defendant used "automatic dialing technology and/or an artificial

or prerecorded voice." (Doc. No. 22 at p. 14).  To the contrary, the First Amended Complaint

pleads that the Robocalls were made "using an automated telephone dialer system with an

artificial or prerecorded voice." (Doc. No. 21 at ¶ 13).  Additionally, the artificial or prerecorded

voice is described in detail.  (*Id.* at ¶ 15).  The First Amended Complaint also contains

allegations supporting the inference that an ATDS was used to make the Robocalls.  For

instance, a complaint sufficiently alleges the use of an ATDS where it can be inferred that the

subject calls were made "en masse." *See Strickler v. Bijora*, 2012 WL 5386089 (N.D. Ill. Oct.

30, 2012).  Here, the First Amended Complaint alleges that Defendants' calls were "widespread"

as evidenced by the 1336 complaints noted on the Better Business Bureau website over the past

three years.  (Doc. No. 21 at ¶ 23).  Thus, the First Amended Complaint contains allegations

from which the Court can infer that Defendants used an ATDS.

> **C.      The First Amended Complaint Does Not Improperly "Lump" Both
> Defendants Together.**

Defendants make the unfounded contention that the First Amended Complaint

"improperly groups the Defendants together so that neither Defendant is put on notice of

precisely what it did." (Doc. No. 22 at p. 12).  To the contrary, the First Amended Complaint

alleges each of the two Defendant's role in causing the statutory violations.  In short, Plaintiff

alleges that each Defendant engaged in the same illegal conduct by making, or causing to make,

unsolicited telemarketing Robocalls to Plaintiff's residential phone line without her consent. (Doc. No. 21, FAC at ¶¶ 12-23). Faced with these allegations and the liberal "notice" pleading standard under the Federal Rules, Defendants are essentially arguing that the First Amended Complaint must be dismissed because Plaintiff has not yet obtained discovery into the full details of Defendants' relationship with one another with respect to the Robocalls. As the details of Defendants' relationship to one another and the Robocalls is within their exclusive possession, Defendant's contention cannot support dismissal here.

This level of detail in differentiating the defendants' respective roles is simply not required by the caselaw to survive a Rule 12(b)(6) motion to dismiss. *See, e.g., Peter Strojnik, P.C. v. Singalife, Inc.*, 2009 WL 605411 at *4 (D. Ariz. Mar. 9, 2009) (finding use of the term "Defendants" sufficient under Rule 8(a)(2) "because it puts all Defendants on notice that each defendant is being sued for violating the TCPA."); *Kramer v. Autobytel, Inc.*, 759 F.Supp.2d 1165, 1171 (N.D. Cal. 2010) (upholding TCPA complaint with nearly identical allegations against multiple defendants where allegations did not distinguish roles); *Hewlett-Packard Co. v. CP Transp. LLC*, 2012 WL 4795766 at *2 (S.D. Fla. Oct. 9, 2012) (motion to dismiss denied in case bringing single cause of action against two defendants where same allegations were made against each defendant); *Powerhouse Productions, Inc. v. Widgery*, 2008 WL 822034 at *2 (E.D. Tex. March 26, 2008) ("[W]here an allegation is made against 'Defendants,' that allegation is made against each of the separate defendants. The Defendants' concern that they are unable to 'determine which allegations are against which Defendants' is, therefore, unwarranted.").

Thus, Plaintiff's allegations that both Defendants are responsible for the Robocalls are sufficient under the "notice" standard required by Rule 8(a). As such, Defendants' contention

that the First Amended Complaint should be dismissed because it improperly groups the two

Defendants together should be rejected.

### VII.    Plaintiff's Properly Claims Damages for Emotional Distress.

Defendants make the unfounded contention that damages for emotional distress are not

available under the TCPA.  To the contrary, the TCPA allows for the recovery of actual

damages.  *See* 47 U.S.C. § 277(b)(3).  *See also Universal Underwriters Ins. Co. v. Lou Fusz

Auto. Network, Inc.*, 300 F.Supp.2d 888, 893 (E.D. Mo. 2004) *aff'd*, 401 F.3d 876 (8th Cir. 2005)

("Thus, a remedy offered by the TCPA is actual damages."); *G.M. Sign, Inc. v. Grp. C

Communications, Inc.*, 2011 WL 98825 (N.D. Ill. Jan. 10, 2011) ("The TCPA provides for a

private right of action to recover the greater of actual damages or $500 in statutory damages for

each violation.").  By its plain meaning, actual damages include damages for emotional distress.

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Amended Complaint and

Motion to Strike Certain Damages should be denied in their entireties.  Alternatively, should the

Court not deny Defendants' motion to dismiss for lack of personal jurisdiction, Plaintiff

respectfully requests that the Court grant him leave to conduct jurisdictional discovery.


Dated: May 13, 2013

                                    Respectfully submitted,

                                    By: */s/ Sergei Lemberg*
                                    Sergei Lemberg
                                    LEMBERG & ASSOCIATES LLC
                                    1100 Summer Street, 3rd Floor
                                    Stamford, CT 06905
                                    Telephone: (203) 653-2250
                                    Facsimile:  (203) 653-3424
                                    E-mail: slemberg@lemberglaw.com
                                    Attorneys for Plaintiff

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 13, 2013, a true and correct copy of the foregoing was filed with the Clerk of Court for the United States District Court for the Western District of Texas using the CM/ECF system and that the document is available online.


       /s/Sergei Lemberg       
        Sergei Lemberg, Esq.