UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JONATHAN HUDAK,                          :
     Plaintiff,                         :
                                       :
v.                                       :          3:13-cv-00089-WWE
                                       :
THE BERKLEY GROUP, INC.                  :
and CARIBBEAN CRUISE LINE, INC.,         :
     Defendants.                        :

**MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS**

Plaintiff alleges that defendants violated the Telephone Consumer Protection Act, 47

U.S.C. § 227, *et seq.,* ("TCPA") and the Connecticut Unfair Trade Practices Act ("CUTPA") by

making, or causing a third party to make on their behalf, up to two calls a day to plaintiff's

cellular phone using an automated telephone dialing system with an artificial or prerecorded

voice ("robocalls").

Defendants have filed a motion to dismiss for (1) lack of personal jurisdiction and (2)

failure to state a claim.  Defendants also argue that the TCPA does not permit damages for

emotional distress.  For the following reasons, defendants' motion to dismiss will be granted in

part and denied in part.

**BACKGROUND**

For purposes of ruling on a motion to dismiss, the Court accepts the allegations of the

complaint as true and draws all inferences in favor of plaintiff.

Plaintiff Jonathan Hudak is a resident of Wilton, Connecticut.  Defendants The Berkley

Group, Inc. and Caribbean Cruise Line, Inc. are Florida corporations.

Defendants work in concert to market and sell timeshare properties.  In furtherance of this

marketing effort, defendants placed, or caused to be placed, hundreds of robocalls to plaintiff's

cellular phone.  These robocalls prompt the listener to stay on the line to claim a "free" cruise to the Bahamas.  In reality, the "free" cruise is not free, as persons accepting the cruise offer are required to pay various fees and/or costs and must attend a sales presentation for timeshares that defendants market.  Plaintiff claims that these unsolicited telemarketing calls to his cellular phone violate the TCPA by using an artificial or prerecorded voice to deliver a message without the prior express consent of plaintiff.  See 47 U.S.C. § 227(b)(1)(A)(iii).   Plaintiff further claims that the calls misrepresented that he had won a "free" cruise because the calls failed to adequately disclose various fees, costs and conditions associated with accepting defendants' offer.  Accordingly, the calls violate CUTPA's prohibition on deceptive practices.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader.  Hishon v. King, 467 U.S. 69, 73 (1984).  The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).   A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### I.  Personal Jurisdiction

"[T]he amenability of a foreign corporation to suit in a federal court in a diversity action

is determined in accordance with the law of the state where the court sits. . . ."  Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir. 1963).   In Connecticut the court must determine if the state's long-arm statute reaches the foreign corporation.  If so, the court must decide whether the exercise of jurisdiction comports with due process.   Bensmiller v. E.I. Dupont de Nemours & Co., State of La., 47 F. 3d 79, 81 (2d Cir. 1995).

"Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction."  Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d. Cir. 1996).  "After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant."  Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d. Cir. 1990).  At this preliminary stage, plaintiff's *prima facie* showing may be established solely by allegations.  Id.

Plaintiff alleges that this court may exercise personal jurisdiction over the out-of-state defendants because his claims arise out of or relate to the multiple phone calls defendants made, or caused to be made, into the State of Connecticut.  Defendants deny that they made any of the calls at issue but do not deny that they caused them to be made.  Defendants argue that they lack sufficient contacts with Connecticut to give rise to general jurisdiction.

Connecticut's long-arm statute provides:

(f) Every foreign corporation shall be subject to suit in this state ... on any cause of action arising as follows: ...

(2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; ...

3

(4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. § 33-929(f)

Here, plaintiff alleges that defendants have committed tortious conduct and repeatedly solicited business in this state. Either allegation, if true, would subject defendants to personal jurisdiction under Connecticut's long-arm statute.

Even if the Court were to consider defendants' affidavits, which deny direct responsibility for the calls at issue, the FCC, in implementing the TCPA, stated that "the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Mem. Op. & Order, 100 FCC Rcd 12391, 12397 ¶ 13 (1995). As discussed above, defendants have not denied causing the calls at issue to be made. Even if they had, it would not make plaintiff's allegations legally insufficient. Accordingly, plaintiff has met his *prima facie* burden of demonstrating personal jurisdiction under Section 33-929(f)(4).

Plaintiff also asserts personal jurisdiction based on defendants' repeated solicitation of business in Connecticut. Defendants respond that "CCL's contact with residents of Connecticut is limited to direct mailing and phone calls." Nevertheless, under Section 33-929(f)(2), if a defendant repeatedly solicits business in Connecticut, "a plaintiff need only demonstrate that the defendant could reasonably have anticipated being hauled into court here by some person who had been solicited in Connecticut and that the plaintiff's cause of action is not materially different from an action that might have resulted directly from that solicitation." A Slice of Pie Productions, LLC v. Wayans Bros. Entertainment, 392 F. Supp. 2d 297, 304 (D. Conn. 2005).

Here, where plaintiff's causes of action are based upon phone solicitations themselves, the defendants could reasonably have anticipated being hauled into court where such solicitations were targeted.  As discovery has not begun, plaintiff's well-pleaded allegations - that defendants' joint telemarketing scheme is widespread in Connecticut - satisfiy the *prima facie* burden of demonstrating "continuous and systematic general business contacts."  See Metropolitan Life 84 F.3d at 568.  Accordingly, plaintiff has met his *prima facie* burden of demonstrating personal jurisdiction under Section 33-929(f)(2).

As the facts in plaintiff's complaint support the conclusion that defendants were responsible for the phone calls at issue in this case, and the phone calls were directed to Connecticut, defendants have sufficient minimum contacts with this forum to give rise to specific jurisdiction in the context of this lawsuit.  See Kernan v. Kurz-Hastings, Inc. 175 F.3d 236, 242 (2d Cir. 1999).  Moreover, subjecting defendants to this Court's jurisdiction does not offend traditional notions of fair play and substantial justice.  Indeed, defendants purposely availed themselves of the privilege of doing business in Connecticut and could foresee being haled into court here.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

In determining whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice," the Second Circuit considers the following five Asahi factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies."  Metropolitan Life, 84 F.3d at 568; Asahi Metal Industry Co. v. Superior Court,

480 U.S. 102, 113–16 (1987).

There is no evidence that defendants will be subjected to undue hardship by defending this suit in Connecticut, where they admittedly solicit business, especially since "the conveniences of modern communication and transportation ease what would have been a serious burden" in the past.  ICG America, Inc. v. Wine of the Month Club, Inc., 2009 WL 2843261 at *8 (D. Conn.).  The interests of Connecticut in adjudicating this case are compelling as the alternative would force Connecticut residents to seek justice afar, in this instance Florida, despite that defendants purposefully targeted their communications on Connecticut.  In other words, Connecticut has a strong interest in ensuring citizens that are victims of tort or deception while in Connecticut may have their grievances addressed in Connecticut.  Plaintiff's interest in obtaining convenient and effective relief is similarly strong in that the alternative - filing suit in Florida - may be so inconvenient as to be impracticable.

The interstate judicial system's interest in obtaining the most efficient resolution of the controversy is a neutral factor.  If plaintiff and all similar plaintiffs were forced to file suit in Florida, Florida courts could specialize in analyzing defendants' practices, increasing the efficiency of administering similar lawsuits.  Nevertheless, fewer controversies would be resolved if, as is likely, the burden of travel on some potential plaintiffs would overmatch their will to bring suit.  Finally, the shared interest of the states in furthering substantive social policies favors allowing plaintiff to bring suit here in Connecticut, as potential plaintiffs would be more likely to seek enforcement of social policies through suit when they can do so in their home state.

The five Asahi factors, considered together, weigh in favor of subjecting defendants to this Court's jurisdiction.  Under the circumstances, assertion of personal jurisdiction does not

offend traditional notions of fair play and substantial justice.  Accordingly, the Court will not dismiss plaintiff's claims for lack of personal jurisdiction.

## II.  Failure to State a Claim: "lumping"

Defendants argue that plaintiff impermissibly lumps them together, making it unclear which defendants are alleged to have committed which wrongs.  The complaint clearly alleges that the two defendants acted jointly in violation of the TCPA by causing calls to be made to plaintiff's phone.  Prior to discovery, plaintiff need not explain the details of each defendant's role in the planning, funding, and executing defendants' alleged joint telemarketing scheme.  Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant.

## III.  Failure to State a Claim: TCPA

The relevant portion of the TCPA provides the following:

(1) Prohibitions

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--

***

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

47 U.S.C. § 227(b)(1)

Defendants argue that plaintiff fails to allege (1) that defendants made the calls at issue

and (2) that defendants used automatic dialing technology and/or an artificial or prerecorded voice.  Defendants contend that plaintiff has offered mere legal conclusions with no supporting facts.  More specifically, defendants state, "Plaintiff must provide *facts*, which they [sic] have blatantly failed to do and cannot do, as no such facts exist."

Neither of defendants' contentions has merit.  Plaintiff's amended complaint alleges that defendants "made, or caused a third-party to make on their behalf, up to two calls a day to [plaintiff's] cellular phone using an automated telephone dialing system with an artificial or prerecorded voice."  Am. Compl. ¶ 13.  Moreover, plaintiff's amended complaint contains supporting facts, including information from defendant Caribbean Cruise Lines' website.  Under the "Terms and Conditions" section, the website provides the following:

> This is an offer to sell travel and all recipients are entitled to the free round-trip Caribbean Cruise Line cruise with meals and entertainment included to and from Grand Bahama Island, with no purchase necessary.
>
> ***
>
> Caribbean Cruise Line markets and is responsible for quality travel packages to promote specific hotels and resorts in Orlando, Ft. Lauderdale, and Grand Bahama Island which it exclusively owns and operates, and in return requires the attendance at a presentation on the sale of independent vacation ownership resorts such as Vacation Village at Bonaventure and Vacation Village at Parkway.
>
> ***
>
> This advertising material is being used for the purpose of soliciting sales of a vacation ownership plan.

Am. Compl. ¶ 18.  The two timeshare properties that defendant Caribbean Cruise Lines mentions by name on its website (Vacation Village at Bonaventure and Vacation Village at Parkway) are two of the properties that defendant Berkely markets and sells.  In addition, these timeshares are

8

featured in the sales presentation that "free" cruise recipients are required to attend.  Finally,

plaintiff points out that the Better Business Bureau gives defendant Caribbean Cruise Lines an

"F" rating, noting that 1,336 complaints were closed in the last three years.  Under the

"Additional Complaint Information" section of that website, the Better Business Bureau states:

> Our file contains a pattern of complaints from consumers who state they were
> contacted by this company and told they won a free three day two night cruise to the
> Bahamas. The only fees mentioned are the port fees in the amount of $59 per person.
> Some consumers state they are not told of additional fees or that they must attend a
> two hour timeshare presentation as a part of the agreement. Consumers report the
> timeshare presentation is very high pressure as well as high pressure sales to upgrade
> their cruise.

Am. Compl. ¶ 23.

While defendants argue that plaintiff's TCPA claim is not plausible, more implausible is

the theory that defendants have nothing to do with a telephone marketing campaign for their own

products and services.  Plaintiff has adequately alleged that defendants made the calls at issue in

this case.

Finally, defendants cite Knutson v. ReplyA, Inc. for the proposition that a court may not

rely on naked assertions to infer that calls were randomly generated or impersonal.  See 2011 WL

291076 at *2 (S.D. California).  There, the California court was looking at whether the calls were

randomly generated, not at whether they were prerecorded.  Here, in contrast, plaintiff's amended

complaint provides details about the hundreds of prerecorded calls that he received: "Defendants'

Robocalls started with the sound of a horn and continued with an artificial or prerecorded voice

prompting plaintiff to stay on the line to claim the 'free' cruise to the Bahamas he won."  Am.

Compl. ¶ 15.  After receiving hundreds of calls, plaintiff is in a good position to determine if the

calls were prerecorded.  Accordingly, the Court is not relying on naked assertions.  As plaintiff

has adequately alleged that an artificial or prerecorded voice was used by defendants to make the calls at issue, plaintiff's TCPA claim will not be dismissed for failure to state a claim.

### IV.  Emotional Distress: TCPA

Defendants argue that binding legal authority prohibits emotional distress damages for a TCPA violation but then cite to cases from the District of Minnesota and the Northern District of Illinois.  The cases cited by defendants do not come anywhere close to holding that emotional distress damages are not available for TCPA violations.  See Edeh v. Midland Credit Management, Inc. 748 F. Supp. 2d 1030, 1042 (D. Minn. 2010) (finding unclear to what extent the plaintiff's emotional distress was attributable to the defendant's violation of the TCPA and holding that a reasonable jury could award the plaintiff damages for emotional distress); Martin v. Leading Edge Recovery Solutions, LLC, 2012 WL 3292838 at *4 (finding that the plaintiffs were *not required* to allege emotional distress in order to avoid having their case dismissed for lack of standing).

Plaintiff responds with persuasive authority that "a remedy offered by the TCPA is actual damages."  See Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc., 300 F. Supp. 2d 888, 893 (E.D. Mo. 2004); See also G.M. Sign, Inc. v. Group C Communications, Inc. 2011 WL 98825 at *2 (N.D. Ill.) ("The TCPA provides for a private right of action to recover the greater of actual damages or $500 in statutory damages for each violation.").  Accordingly, the Court will not dismiss plaintiff's request for emotional distress damages at this time.

### V.  Failure to State a Claim: CUTPA

Defendants argue that plaintiff has failed to state a claim for CUTPA violation.  Plaintiff has not opposed dismissal of the CUTPA count.  Accordingly, the CUTPA count will be dismissed.

**<u>CONCLUSION</u>**

For the foregoing reasons, defendants' motion to dismiss is GRANTED in part and DENIED in part.  Defendants' motion to dismiss [doc. # 22] is GRANTED as to the CUTPA count but DENIED as to the TCPA count and as to plaintiff's request for emotional distress damages.

Dated this 23rd day of January, 2014, at Bridgeport, Connecticut.


_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE